The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Are we prepared to hear argument in the 6th District Republican Committee v. Alcorn? Mr. Hyten, we'd be pleased to hear from you. Good morning, Your Honors, and may it please the Court. My name is Toby Hytens on behalf of the appellants. As we explained in our brief, the District Court's injunction should be reversed for three separate reasons. Justiciability, constitutionality, and remedy. I'd like to start very briefly with a point about remedy because it underscores why we don't think that this Court can simply affirm the District Court's injunction in this case. Simply put, there is no principle of law, be it overbreadth doctrine or any other, that permits a plaintiff to challenge and seek an injunction against a statutory provision that does not apply to that plaintiff. But even though the plaintiff before this Court participates exclusively in federal elections, the District Court's injunction will very soon begin having an impact on the 2019 Virginia state elections. So unless this Court is going to affirm the District Court's injunction in its entirety, we would urge the Court to modify or at least stay that portion of the District Court's injunction as soon as possible. That brings me to my second point, though, justiciability. With respect to the severability point, don't you put yourself in an awkward position where the second and third sections or sentences of the law have been applied to the congressional, have been applied to the committee and to the congressional elections? Well, Judge Wilkinson, I want to clarify what we mean by apply. I would concede that the 2016 forms used in the congressional elections did not accurately describe the language of the statute. But I don't think that's the same as saying it's been applied. But it was, I mean, because it was, it operated to allow an incumbent congressman to choose the method of renomination and to have a plenary authority over that choice, which was the same thing the General Assembly candidates had. And those were the second and third. And I admire your candor in your latest submission, indicating that it is, I just think you put yourself in a difficult position with respect to severability when you have, at least as a de facto matter, been operating under the assumption that those second and third sentences applied to the committee. Three points on that, Judge Wilkinson. I'll start with the first one. Even assuming that everything that they say about that is true, they would at most be stating a violation of state law, if the committee, because it's not that they argue that state law properly understood applies to them in that way. I'm sorry. I'm not quite understanding your response to Judge Wilkinson's question, which I also have with respect to the interrelationship, given that you treated them similarly. I apologize for that, Judge Duncan. When we say treated similarly, what I think is fair to say is that the forms used in 2016 and 2017 treated them similarly. The first point I would say that, as a matter of fact in this case, the evidence on the record, they were not in fact treated similarly, because as we pointed out before the district court, there is no evidence that a congressional incumbent was ever actually permitted to choose the method of nomination. And, in fact, the evidence in the record is to the contrary. I agree with that, Judge Wilkinson. That's not good for you. I agree that it's not good for us, Judge Wilkinson, and that is why the forms were promptly changed as soon as I and my office were made aware of them. But the reason I think it matters is because there is no evidence in the record that a person was actually permitted to choose the method of nomination. In fact, it's in the record. There are e-mails from two congressional committees that say, this form seems to indicate that I get to choose the method of nomination, but under State law, I don't get to choose the method of nomination. So there is no evidence that a congressional incumbent ever actually chose the method of nomination. You're saying it's a matter of State law, but what we're here to determine is whether the State law, in its totality as it's been applied, is constitutional. Well, Judge Wilkinson, I think the question is whether the State law as applied to this plaintiff is unconstitutional. And I agree. That question is before the court. But, again, my friends on the other side, you mentioned that we're in a difficult position. I think they're in a difficult position as well. Because their argument is not that when the State Board of Election promulgated that form in 2016, that that was a correct interpretation of Virginia law. They seem to concede that that was an incorrect interpretation of Virginia law. So we are straight in the Pennhurst situation. If they believe that the State election officials have violated State law, their first remedy would be to go to the State election officials and say, please stop violating State law. But, second, if they believe that the State election officials are violating State law, Pennhurst says, the place that you go to assert that is State court, that a Federal court does not have the authority to enjoin or enforce or... I would think that... Excuse me. I'm sorry, Judge Wilkinson. If there's a place for over-breadth doctrine, would it not, under Broderick v. Oklahoma, exist with respect to the First Amendment? Certainly, Judge Wilkinson, in the sense that the First Amendment is the core place. Some of this is a bit prudential because in a severance case, it's a bit prudential to the extent that you ask whether the issues have been briefed and argued and discussed. That's one of the prudential factors. And, of course, you ask under Brooker whether the remaining sections are constitutional and you ask what is the degree of similarity of the underlying. So I think it's a sort of a prudential doctrine here. But one thing I would like to get from you is how common is this incumbent protection scheme across the country? Are these incumbent protection acts commonly enacted? Are they enforced in a good many states or is Virginia relatively unique? Well, Judge Wilkinson, here, I guess I'm just going to have to fall back upon hoping to get further points for candor. I am not aware of any other statute other than Virginia's. I can't represent to this Court that I have verified exhaustively that no other state, but I'm not prepared to represent that other states have statutes like this. What I would say, though, about this statute, this statute is not a recent statute. One thing I have tried to figure out is how long this statute has been part of Virginia law. Fair enough. How long it's been part of Virginia law? Well, the thing I would clarify, because I do think this relates, obviously, to Judge Wilkinson's dissent in the Miller case. There is something, Jermaine, when I look, not surprisingly, I reread Judge Wilkinson's dissent in the Miller case this morning, and everything I saw in that dissent was about the provision governing the General Assembly. Specifically, Judge Wilkinson, you used the language, dictate the party's method of nomination. That is an accurate description of the General Assembly provision. Could I go? I understand that you're responding to Judge Wilkinson's question. Could I add on so that you could factor this into your response? It seems to me that your response takes you back to the question about remedy and the severability issue. And the difficulty that I'm having, and perhaps you could include this as you go forward, is that by focusing only on what is required under that fourth sentence, you risk or you have to ignore or implicitly, well, implicitly ignore the constitutional problem that underlines the other provisions as well. So if you could. Let me take that first, Judge Duncan, because I think I understand that the concern is ignoring the second and third sentences. I think this does relate to the history of the statute, which is that the General Assembly provisions and the congressional provisions, I can represent this, were enacted at least 30 years apart. Here's what I've been able to verify. The congressional provision has been part of the Code of Virginia since at least 1950. I have not gone back and verified when it was enacted prior to 1950. The General Assembly provisions were separately enacted and inserted into Section 509 in 1978. So this isn't one law that was enacted altogether at a single time by a single legislature. And I think to go back to the Judge Wilkinson and Judge Duncan points, I think there are two separate issues going on, and I'm going to try to separate them out. First is the overbreath question. What do our friends have the ability to challenge in the first instance? And the second issue is if they succeed on that challenge, what is the severability analysis after they succeed? I think our fundamental threshold point, and I haven't seen their brief refute this. I am aware of not a single overbreath challenge in which this court or the U.S. Supreme Court has ever, under the overbreath doctrine, allowed a plaintiff to challenge a statutory provision that does not apply to them. The case of the district. That's sort of question begging as to whether it applies or whether it's not in light of the state's own actions, which you say violated state law, but that's something that's on you. I want to come back to a basic question because it seems to me germane to the severability analysis, and that is that the conceptual problem underlying both the second and third section of the provisions of the General Assembly and also the part relating to the conceptual problem seems to me to be the same, which is that an individual incumbent can override the collective judgment of the party as to the method of nomination. And what is hard for me is the language in the Supreme Court opinions. And I know probably you don't want to hear it, but in California, V. Jones, they say, you know, unsurprisingly our cases vigorously affirm the special place the First Amendment reserves for the special protection that accords the process by which a political party selects a standard bearer, which best represents the party's ideologies and preferences. And that's part of a very long section on the right of political association and on the right of parties in a representative democracy. And then we have in Tashajohn v. Republican Party of Connecticut, as we have said, any interference with the freedom of a party is simultaneously an interference with the freedom of its adherence. And then they go and say the most important thing a party does is select a nominee. So quite honestly, as the judge of an intermediate and inferior federal court, I don't want to fly in the face of that Supreme Court language. And I don't know really, I suppose we could try to negotiate around it, but it's difficult for me when I read those opinions. It's difficult for me. Judge Wilkinson, I don't take issue with the existence of any of that language, but I would urge the court to take heed of the Supreme Court's most recent language. This is from the Clingman decision. The Supreme Court, I don't think they can say this any clearer than they have. Quote, not every electoral law that burdens associational rights is subject to strict scrutiny. The Supreme Court has expressed, and they put their money where their mouth is, in the Clingman decision because the Clingman decision, after all, involved a state law that restricted who could vote in a party's primary. It was a law that said registered members of another party, even if you the party would like Democrats to participate in your party. This is defense of all of the provisions here. Is that what you're saying to us? No, I'm not saying that, Judge Motz. I'm pushing back against the idea that any restriction on the party. So what is your position with respect to the challenge that the plaintiffs make to the fourth sentence? Yes. Our position is that that law is constitutional, and I'll explain why. So you're, okay. Yes. But you have a different position. You have another additional argument with whatever argument you have on the merits. You have an additional argument with respect to the second and third sentences, correct? Yes. The plaintiffs simply don't have standing to challenge the second. Because none of them are people that are damaged by those sections. Absolutely right, Judge Motz. And because you believe that there is severability. Absolutely, Judge Motz. So however badly we think about the fourth sentence, the state maintains that the second and third sentences are severable. Yes. Correct? Correct. So I sort of share Judge Wilkinson's view with respect to the fourth sentence, and I just wonder as a, not prudential in the sense that the Supreme Court's taught us, but just as a matter of prudence, why the state is defending these. I mean, I think you have a decent argument with respect to the second and third sentences. But some, if we think that the fourth sentence is wrong, that's contrary to Supreme Court law, why is the state worrying about that? Because you have an obligation to defend all state statutes? Is that what you're going to tell me? When a reasonable defense can be made of them. Yes, Judge Motz, we have an obligation. I am familiar with that argument. I advocated that for a long time. So if I could go to Judge Wilkinson's point on what is the interest of this statute, I do want to address that. The Supreme Court, it's not just that they've said that not all burdens. In fact, the Supreme Court has recently rejected a number of arguments that restrictions on a party's ability to choose their own nominee in the way they want are subject to strict scrutiny. The Supreme Court did not apply strict scrutiny in the Timmons case. It did not apply strict scrutiny in the Klingman case. And the line the Court's drawn is germane here. I think in its recent decisions, the Court says, laws that regulate the internal operation of the party are subject to strict scrutiny. Laws that regulate how states pick their nominees are not. And with that, I'd reserve the remainder of my time. All right. Let me ask my colleagues if they have any further questions. Thank you very much. Thank you. May it please the Court. I am Jeffrey Adams representing the 6th Congressional District Republican Committee. The intent and the effect of the Incumbent Protection Act is to entrench incumbents in their offices to a dangerous degree. And that much is clear from what the Act does, what it doesn't do, and when it does what it does. What the Act does in all of its manifestations, second or third sentence or fourth sentence, is privilege incumbents by giving them the power to either dictate or influence the method of nomination. Are you representing anybody in this case that is affected by the second and third sentences? Yes. Who is that? And that would be the 6th District Committee because the forms promulgated and used. Yeah, but those forms are gone now. Well, we would argue that the forms actually do not fully correct that issue, and we would also argue that. It's only because of the forms, so that's what you're latching on to. Yes. Okay. If we should conclude that that isn't sufficient, then you don't have a claim with respect to the second and third sentences. You don't have somebody that can challenge it in this case. That's correct. Not in our case in chief, but we would argue that both severability and overbreadth would suggest that this Court should affirm the District Court's decision striking down the second and third sentences as well. Well, I was very struck by the severability argument. We apply state severability law to severability of a state statute. And under state severability law, your argument fails. I agree with that, Judge, and we've been looking at that and trying to unpack that. And as I've seen the cases, Booker actually postdates the cases that rely solely on state law. And it seems to me that the – Booker is dealing with a federal statute. We're dealing with a state statute. I agree, but we're dealing with – And we have the Supreme Court saying when you're dealing with a state statute, you look at state severability law. And, indeed, we said that back. We've said that. And I guess what I would say is the way we're reading Booker, it seems to me that we're dealing with federal constitutional rights. Those constitutional questions need to be relevant. But a lot of times when you're dealing with state statutes, you're dealing with federal constitutional rights. In other words, there's a whole thing about getting to the Supreme Court when that's the case. Agreed. I am not – I cannot point to a case one way or the other on that point. Well, we know that there are cases from the Supreme Court saying you apply state severability law. Well, I agree. I just can't point to a case that's dealing with a constitutional question at this time. Could you elaborate, please, on your argument with respect to the forms? You said that they don't fully correct the issue. And is that the totality of your argument with respect to the forms? Does your argument reflect some skepticism about the states not relapsing? Yes. Is it a voluntary cessation argument? Can you sort of fill in the gaps? There are three pieces for the forms I'd like to fill in. First of all, I'd like to contradict counsel. We believe the forms were applied in congressional elections, and that is in the record. In the record, there's correspondence from the chairman of a Democratic congressional committee with the appellants in which those forms were used to order a primary in that primary election, in that election cycle. And we also have testimony from the commissioner of the board and an employee of the board saying that the board was not independently verifying the information that was not elicited in those forms. So the forms were both misleading and insufficient. And yet the submission of those forms and nothing more was enough for them to take the official act of ordering a primary election. So we think there's really no factual question that the forms were used and that those first two sentences, second and third sentences, were applied in congressional elections such as the ones that my... Is the point somewhat academic because the second and third sentences as applied to the General Assembly, if we were to agree with you on the fourth sentence as it applies to the six-district congressional committee, the second and third sentences, which give the General Assembly candidates plenty of authority over the means of renomination, they would seem to have an even more constitutionally defective position than the fourth sentence. I'm not suggesting that the fourth sentence is correct, but if the fourth sentence is held to be an impermissible burden on free associational right of a political party, then the second and third sentences are even more defective. So what would they have to stand on? Well, Judge, I think that's the condition as it pertains now. I think everybody knows that the second and third sentences are unconstitutional. I don't think anybody has any question about that, and yet the state has aggressively defended them in court in a variety of ways, including withstanding arguments that oscillate between too soon to too late, but really are aggravating and reprobating. We are, as we keep telling people, a court of limited jurisdiction, and we need a case here in which someone is actually injured before us. We're just not a roving correction of state and federal law going around saying, well, we just think this is unconstitutional, and this is unconstitutional. And I understand that, Your Honor, and I can get to that by answering. This is my question. Yes. If we could get back to the other two points in response to that question. I promise I'll get back to you. So the other two points are we do believe this is a case of voluntary cessation, pretty clear, that really this isn't Pennhurst. Pennhurst was a case where the claim was merely a claim that you are not properly enforcing the law. It was a claim that you've gone beyond the bounds of the law. Now, we probably could have brought that claim in this case, but I don't think that precludes us bringing the constitutional claim that we did bring. The law was applied against us, and the law is, in fact, unconstitutional. So we believe it's not Pennhurst, and really the best way of understanding the change in the forms is as a voluntary cessation. Your position in that regard is reinforced because these forms have been something of a moving target. The forms used in 2016 and 2017, I think, are different from the forms used in 2014. That is correct, and they're still moving. In support of your argument about voluntary cessation. The latest iteration of Elect 509 was promulgated eight days after we filed our brief in this matter, November 28th. The other thing to know about the forms, actually, is the prior litigation in this case concluded in 2015 with a finding that the plaintiffs in that case did not have standing to challenge the act. The change in forms happened in 2016. I submit to you that that is at least a suspicious timeline, that it was a situation where there had been a challenge. The challenge had been rebuffed on standing grounds, and at that point the state went from forms that worked according to the law. We can argue whether they're constitutional or not. But forms that were consistent with the law as written, and they broke their own forms. They knew how to do it right, and they chose to do it wrong. They chose to actually heighten the constitutional burden on congressional committees like my clients. Intentional. I mean, I just don't think there's any other reading of it. The other thing about the forms is, even as they currently exist, they still are deficient. I agree that they're improved, but the elect 516, which is currently promulgated, still talks in terms of, and this is further down the form, it says, if the method of nomination was selected by the incumbent pursuant to 24.2-509, you may upload the incumbent's 509 form here. This was referred to in their reply brief. So the new form still talks about, the 516 talks about selecting. And the new 509, again, is better, the language is closer, but it still does not elicit the information whether the incumbent was previously nominated by primary. So the forms still are deficient. They still do not really allow a proper enforcement, and they still at least suggest that to the public and to committee chairmen, that even congressional incumbents have this unlimited power to dictate the method of nomination. And all of that is to say, we believe, in our case in chief, that we have been damaged by the second and third sentences. They've been applied against our client. But analytically, what leg do the second and third sections, sentences, have to stand on if the fourth is struck down? Because the second and third sentences would seem to me to compound the difficulty because the fourth sentence deals with a more limited authority on the point, this is the way it's written, on the part of a congressional incumbent to select a particular method of renomination, whereas the second and third sentences impart not just a limited authority, but a plenary authority. So what possible leg do the second and third sentences have to stand on if the fourth, which is the relatively more, I don't think any of them are benign, but relatively less infirm provision is struck down because of its obvious deficiencies? Judge, there is no leg, and there never has been. One of the things that makes this case so upside down is if you read the briefing, and this has been true in both of the litigations on this matter, the state submissions tend to read along the lines of, this is just a benign, run-of-the-mill electoral law, and to some degree we're going to presume that the state has the power to do this, and it's incumbent on these troublemakers to argue why their wishes should override that of the state. The short answer, and I'm not suggesting that I agree, but the one answer is that no one is before us who is impacted by the second and third, and we normally, our presumption is that defective provisions are several. So that's, I mean, it's not, you weigh that argument as you will, but that is the argument. And our argument for reaching the second and third sentences, there's three heads. We've talked about one, which is we believe they've been applied against us, and we believe that even if the forms were correct, which they're not. When you say us, the party there, but you don't have a party here in this case. Well, we believe, in fact, the use of the defective forms was applied. The forms, yes. I'm sorry. I apologize. The second prong of the argument is really a severability argument. And we believe that this is one, I mean, let's be frank about severability. This is not a party asking you to take a waltz through the Internal Revenue Code because there's one provision of the enforcement language that's unconstitutional, and now we want to challenge it on establishment grounds, the provision related to pastors' housing. This is one subsection of one section. This is one law. It may have been amended. But they're not irreparably linked. I mean, one could be constitutional, one could be unconstitutional. I agree with that. And one could be constitutional and one could be non-constitutional, but it's one law. It's subject to the same constitutional analysis. And it is interdependent. I'm not saying it can't exist independently, but it's interdependent in that you really have one rule that applies in two different ways. So you've got the first and the fifth and the sixth sentences, which apply to every application of that rule, and then the second and third sentence are one particular application, the fourth. The point being, under Booker at least, it would look like not judicial overreach to strike it down, but almost judicial dereliction to leave it standing, when it's so obviously unconstitutional on the very grounds that the fourth sentence is also unconstitutional. But you're giving somewhat short shrift to the deference that we give to state legislatures to make the determination of whether they would rather have the remainder of a statute in place than strike the whole thing down were the choice given to them. And that's the basis for our presumption that provisions are severable and that we apply state severability law. Well, and since we're all making sort of honest confessions, I confess to you, I agree. I think the state legislature would want the second and third sentences of the act to survive. Which is the whole reason for the presumption. But I also think that if Booker has any application, it still should be struck down on the sort of prudential grounds that Judge Wilkinson had mentioned, that this is not a case where you have a court. The district court did not basically go through a stroll through the election law and find something completely unrelated. But you have something that's the same subsection of the same section, fundamentally the same rule of indicating a similar policy, albeit in a different way, the same constitutional infirmity, the same analysis. It seems to me that to leave that standing would really create a bizarre and untenable situation. But also, and if I don't convince you there, we do believe that overbreath applies. And we believe this is a perfect candidate for overbreath. Now, overbreath obviously is a slightly slippery doctrine. And I admit that. We've looked at the overbreath cases, including Munson and a number of the others, and we think that on overbreath there's a very strong argument to strike it down. First of all, Munson I think gives us the clearest almost mechanistic application. Is there an injury in fact? Well, there's an injury in fact certainly from the mere existence of the statute when it comes to the fourth sentence as it applies to my client. But there's also injury in fact we believe because the second and third sentences have in fact been applied against my client. In addition, the question is can the party before the court frame the issues? And I think we can perfectly frame the issues. And actually the issues are crisper on the second or third sentences than they are on the fourth sentence. And on the top line when it comes to the strong medicine that is overbreath, the point of overbreath is it serves a public interest. It says that under certain circumstances, when fundamental First Amendment liberties are at stake here. And they are. I mean that again in the briefing of this, that comes out on one side but not on the other. We're talking about fundamental First Amendment liberties that affect really not just the parties before the court, but every citizen of Virginia with a stake in the electoral process. That in that case the court will relax its rules on credential standing and allow for an overbreath challenge of a statute in order to basically vindicate that public interest. And so it's not the interest of my clients per se, although my clients obviously have to establish the predicates of overbreath. And we think we do. And with regard to overbreath too, I don't know that the courts explicitly say this, but it seems to me that overbreath is almost an expression of almost chilling in the speech area. That there are some laws, the mere existence of which, really damage First Amendment liberties broadly. And that's why you get into this analysis of the legitimate suite versus the illegitimate suite. This is very much like that. Our testimony is clear, our expert testimony is clear, that the mere existence of this law distorts the political process and by doing so injures every Virginian. And so this is a situation where you've got a significant public interest, you've got significant overbreath, and the other point that we would make on overbreath is, as far as balancing legitimate suite versus the unconstitutional provisions, as to the second and third sentences, there is no legitimate suite. I mean, I think that's just apparent. I don't think that's really debatable. There is no legitimate suite to the second and third sentences. Certainly they have not met a constitutional burden of establishing a state interest, compelling or otherwise, that would justify the second and third sentences. And so in that case, we believe that overbreath does allow you to reach this. And did allow the trial court to reach it properly. Can I just mention one or two other things? You've got some time. I want to talk a little bit about Miller, because part of their argument is you can sever one clause from the fourth sentence and less and get rid of that, and the law is constitutional. And our response to that is, well, that would be a mandatory open primary, which would be unconstitutional anyway. And they say, well, that's okay, because the Miller line of cases means you can't have an open primary in Virginia. But it sort of breaks down there, because they never talk about how a primary is closed. And so if you were to sever just that one sentence in the one clause of the fourth sentence, how would that not be a mandatory open primary? And I think it's important to understand that, to understand what we believe happened in Miller. So in Miller, you had a challenge by a committee of the open primary law, both facially and as applied. And this court properly struck down the facial challenge, based on Marshall versus Meadows, with the idea that the open primary law can, in fact, be constitutional if the party chooses to have the primary. At that point, it's the party's free choice, and therefore there's no element of coercion and no constitutional violation, no burden on associational rights. So as long as the party freely chooses an open primary, no problem. The problem in Miller was you had a party that had the primary forced upon it by the incumbent under the Act. It was the interplay of 530 and 509, open primary and incumbent protection. Interestingly, though, and this is a key point, the plaintiffs in Miller did not say, we don't want a primary. What they said is, we're perfectly happy to have a primary as long as it's a primary on these terms, which is a sort of statement of allegiance. So that was what they asked for. That was what they would have agreed to freely. So when the court at the end ruled in favor of them and struck it down as applied, the remedy of the court was to give them exactly what they wanted and move the case sort of into the realm of Marshall versus Meadows to say, we're going to give you exactly what you want, therefore there's no government coercion, no First Amendment liberties are burdened, and we're fine. The court never went into what a closed primary looks like. It could have jumped the other way and said, we'll give you a closed primary rather than remove this element of coercion. It didn't. Jones and our expert testimony provide evidence of what a closed primary looks like, and it requires partisan registration. And so in order to grant them that excising of unless, may I finish? This court would have to not just strike down unless and follows, but in effect it would have to put partisan registration or some other mechanism of closing a primary in place, otherwise the court's remedy would actually inevitably lead to an unconstitutional open primary. Thank you. Thank you. Mr. Hytens. Mr. Hytens, let me ask you this. If the fourth sentence is struck down, what possible constitutional leg do the second and third sentences have to stand on? Because it seems to me that the conceptual problem is the same, and that is the constitutional right is the right of a party to select the basic constitutional right to select the method by which its nominees are chosen. And the state in both instances has lodged in a single individual the right to override the party on the most basic of its functions. And the override is more severe in the case of the General Assembly. So what possible analytical leg do you have to stand on if the fourth sentence is struck down? I mean, the second and third sentences would be falling dominoes, wouldn't it? Judge Wilkinson, of course, I would have to know the precise basis on which the court concluded that the congressional provision was unconstitutional. But answering your question, I could see at least two, but I'd have to know what the court's analysis was. First, the reality is that states have more authority to regulate state elections than they have to regulate federal elections because there are federal restrictions that don't apply to states. I'd have to figure out how those play out. And then second, I'd have to know the precise basis in which the court invalidated the fourth sentence. But I think it is critical just to pick up on something, Judge Wilkinson, that you just said. I think the fundamental and persuasive error in the plaintiff's submission is that they still ignore the fact that the Supreme Court has said three times that parties don't have an absolute right to pick their method of nomination. In fact, the Supreme Court has said three times that the state can compel you to have a primary. And we think that matters when it comes to the fourth sentence because it's not that the party gets to pick under the fourth sentence unless the incumbent overrides it. What the fourth sentence says is that under some circumstances, the state is mandating that you use a primary unless. That's not addressing Judge Wilkinson's question to you, which you have to, for purposes of answering his question, assume that the fourth sentence is correct. Okay. I apologize, Judge Motz. I thought that. We understand that you don't think. No, but I thought. I'm sorry. I thought that I had answered it. I think I said. That's all you have to say. I'm sorry, Judge Motz. Yes. That's all I have to say about. You're essentially saying you would need to know why it was gone. Yes, Judge Duncan. I would need to know why. I think I understood you to say that you would need a little more information than just assuming it away. Correct, Judge Duncan. I would need to know why. And you would need, presumably, to think about the grounds on which a party, presumably a party, directly affected by the second and third sentences. Correct, Judge Duncan. You're right. Is that where we're going? Yes, Judge Duncan. And I guess you're relying on what Judge Duncan would say earlier, that we defer to the state and the state legislature. And so if we came out with a decision that invalidated the fourth sentence, you know, you're the Solicitor General or the Attorney General. You have to advise that these earlier sentences are gone, too, in accord with the state's ruling. You no longer have a viable argument. Yes, Judge Motz. And that brings me to the first of the three quick points I was hoping to make with the court's list. With respect to you say, well, there's no absolute right to a party to select its nominee. Well, I mean, that may be so, but I don't think they dealt with the situation of where the decisions that are normally made collectively, either by the state collectively or by the party collectively. In this case, the state has delegated to a single individual the right to nominate the people who comprise either the various parties' committees. And that this has happened nowhere else in the country, at least not in this form. So the right may not be absolute, but the way in which the right is burdened here and the absence of a state interest and the presence of a private interest in self-preservation, which Justice Breyer has condemned, it's not just the nature of the right, it's the nature of the burden, and it's the insufficiency of the state interest, which has been transferred from a public interest into a personal interest. And that's the basic problem I have with this whole idea of incumbency protection. You see what I'm getting at? I do, Judge Wilkinson, and mindful that my red light is on, I would like to say two quick things with the court's leave. The first is that I think this entire discussion frames that if this court believes that the fourth sentence is unconstitutional in its current form, this court should certify the question to the Supreme Court of Virginia for it to decide how to conduct the severability analysis to avoid a reprise of the Tog Hill situation where this court enjoins an entire statute, the state then says under state law we wouldn't enjoin the entire statute. But if not, that's assuming you lose on severability here. Well, yes, Judge Motz. Well, Judge Motz, yes. Judge Motz, I was saying we think that the proper severability analysis would lead to the conclusion that you would simply sever the unless clause, because I think this relates directly to what... We're talking about different severabilities. I'm sorry, Judge Motz. I'm sorry, I apologize. We're talking about what? I think Judge Motz said we're talking about different severability. But Judge Wilkinson, everything that Judge Wilkinson, I believe that you just expressed the concern about this statute, is eliminated if the unless clause is severed. The elimination of the unless clause solves every constitutional problem that Judge Wilkinson just identified, because at that point this is a mandatory primary statute that the Supreme Court has repeatedly said is perfectly constitutional. How does it get to be a mandatory primary section? I mean, it certainly doesn't – certainly isn't a mandatory primary when – well, not a mandatory primary statute when the incumbent is not running. That's correct, Judge Wilkinson. And I don't know that the unless severance resolves that particular problem. And with respect to your – you have two different severability questions, but one severability question you defended saying, oh, we want severability here because these are state elections. But your other severability argument with respect to the fourth, those are not state elections at all. No, that's correct. So the severability arguments, according to your own analysis, are simply quite dramatically different in kind. I agree they're different in kind, Judge Wilkinson. I don't disagree with that at all. But I think they're both correct with respect to the reasons that we've already outlined. And unless the Court has any further questions, thank you very much. Thank you. Thank you. We will come down and greet counsel and move directly into our next case.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Allyson K. Duncan